IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WADE H. SNODGRASS, | No. CIV S-07-1491-JAM-CMK |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| SHASTA COUNTY DETENTION FACILITY, et al., | |
| Defendants. | |
| _____/ | |

Plaintiff, who is proceeding pro se, brings this civil rights action for damages. Pending before the court is defendants' motion for summary judgment (Doc. 18). Plaintiff has not filed any opposition to the motion.

## I. BACKGROUND

**A.    Plaintiff's Allegations**

Plaintiff claims:

> On the 2nd of August 2006 while being detained on an alleged charge, I was man-handled and thrown onto the bottom three stairs of the upper and lower levels in pod 3-C of the Shasta County Detention Facility

1

in which my left ulnar nerve in my left elbow was crushed and now permanently hindering my movement and strength in my left pinky and ring finger.  Also in the altercation with officer Hicks and officer Dudley my right ulnar bone in my right lower forearm was broken in which I received a compound spiral fracture.  When officer Hicks and officer Dudley hand cuffed me behind my back and then tried to lift me (a 6'2" 260 pound man) up by using the chain between the cuffs (Hicks) and Dudley lifting at my ankles.  After lifting me up several sets of stairs of a flight of approximately twenty.  There was a snap and my right forearm was broken.  I requested a copy of the videotape of the incident, but was told there was not one ever recorded.  I felt this unprofessional and quite convenient for officers Hicks and Dudley.

   It then took the Sheriffs two full days after a lot of complaining by myself to finally be allowed to see a doctor for an X-ray to be taken.  This in itself was totally unprofessional, totally out of order, and I'm sure against the LAW.  The x-ray showed the spiral fracture.  At which time I was taken to the Shasta Regional Medical Center (SRMC) and given a temporary cast.  I was then put in lock down, not medical housing like proper procedure would call.  I was found not guilty of the alleged charges filed against me.  I was released from the Shasta County Detention Facility.  Went to see my doctor David Hankin.  Where I was informed that the Shasta County Detention Facility and Sheriff's Department would no longer be responsible for the payment of my/the medical bills.

   So in short, I am arrested for something I did not do, held in jail for ten months of my life.  Lost everything I had, my house, my job, my vehicles, my girlfriend, my dog, basically my whole life.  Then I have a broken right arm which may need to be re-broken and pinned says the doctor.  I was also told that I would develop a certain amount of arthritis in that lower right arm and wrist and would have it for the rest of my life.  I had to have surgery on November 3rd 2006 to my left ulnar nerve.  In which there are thousands of dollars in doctor bills.  I feel there needs to be something done.  I am a United States citizen, and I feel that this WAS and IS against my Constitutional rights.

Plaintiff seeks compensatory damages.

  **B.**  **Undisputed Facts**

Based on the evidence submitted by defendants, the following facts are undisputed:

  1.  Plaintiff was a pre-trial detainee at the Shasta County Jail from January 26, 2006, through September 27, 2006;

  2.  On August 2, 2006, defendant Hicks and another officer were escorting plaintiff, who was unrestrained at the time, to his new cell assignment;

  3.  As plaintiff and the officers reached the sally port between B and C blocks, plaintiff was informed that he would be receiving an upper tier cell assignment and that he would have an upper bunk;

4. Upon learning this, plaintiff began to yell at the officers that he refused such an assignment because he had paperwork stating he should be housed on the lower level in a lower bunk;

5. Plaintiff became aggressive and confrontational, throwing his tub of personal belongings onto the floor;

6. Defendant Hicks became concerned for his safety and placed plaintiff's right wrist in a rear wrist lock in order to gain control of plaintiff and escort him to the assigned cell;

7. Plaintiff resisted defendant Hicks' efforts to move him towards the assigned cell and defendant Hicks forced plaintiff out of the sally port area and into C block;

8. Upon entering C block, defendant Hicks was at the base of the stairs to the upper tier and plaintiff began to pull away and use his body weight to turn towards defendant Hicks;

9. Defendant Hicks considered this an aggressive action and, in order to maintain security, he forced plaintiff to the ground so he could be handcuffed;

10. After plaintiff was handcuffed he was helped to his feet and immediately escorted to an observation cell for a cool-down period;

11. Defendant Hicks did not lift plaintiff by the handcuff chain and defendant Dudley was not involved in any way;

12. After plaintiff complained of wrist pain, he was promptly evaluated that same day by medical staff and provided pain medication;

13. Plaintiff was seen the next morning by a medical doctor and x-rays were taken which revealed a fracture;

14. That afternoon, plaintiff was transported to Shasta Regional Medical Center for further treatment where he received a splint and was prescribed additional pain medication;

15. A jail disciplinary hearing was held concerning the incident on August 4, 2006, and plaintiff stated at the hearing that he had been unruly; and

16. Plaintiff stated at his deposition that he had been aggressive on August 2, 2006, and that it appeared to him at the time that defendants were attempting to do their jobs by maintaining control.

These undisputed facts are derived from the declarations of defendants Hicks and Dudley, the declaration of officer Sheila Ashmun, and plaintiff's deposition testimony. Plaintiff has not offered any evidence to contradict the foregoing.

3

## II. STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party

must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

/ / /

/ / /

### III. DISCUSSION

Plaintiff alleges that defendants Hicks and Dudley used excessive force on August 2, 2006, while he was a pre-trial detainee in the custody of defendant Shasta County Sheriff's Department. Plaintiff also claims that he was denied timely and adequate medical treatment. The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

When prison officials stand accused of using excessive force, the core judicial inquiry is ". . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992); Whitley v. Albers, 475 U.S. 312, 320-21 (1986). The "malicious and sadistic" standard, as opposed to the "deliberate indifference" standard applicable to most Eighth Amendment claims, is applied to excessive force claims because prison officials generally do not have time to reflect on their actions in the face of risk of injury to inmates or prison employees. See Whitley, 475 U.S. at 320-21. In determining whether force was excessive, the court considers the following

factors: (1) the need for application of force; (2) the extent of injuries; (3) the relationship between the need for force and the amount of force used; (4) the nature of the threat reasonably perceived by prison officers; and (5) efforts made to temper the severity of a forceful response. See Hudson, 503 U.S. at 7. The absence of an emergency situation is probative of whether force was applied maliciously or sadistically. See Jordan v. Gardner, 986 F.2d 1521, 1528 (9th Cir. 1993) (en banc). The lack of injuries is also probative. See Hudson, 503 U.S. at 7-9. Finally, because the use of force relates to the prison's legitimate penological interest in maintaining security and order, the court must be deferential to the conduct of prison officials. See Whitley, 475 U.S. at 321-22.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See

Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference.  See Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 106.  Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim.  See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Defendants argue that they are entitled to summary judgment because: (1) plaintiff cannot establish essential elements of his claims; (2) there is no evidence to support municipal liability as to defendant Shasta County Sheriff's Department; and (3) defendants Hicks and Dudley are entitled to qualified immunity.

### A. Defendant Shasta County Sheriff's Department

Municipalities and other local government units are among those "persons" to whom § 1983 liability applies.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).  Counties and municipal government officials are also "persons" for purposes of § 1983.  See id. at 691; see also Thompson v. City of Los Angeles, 885 F.2d 1439, 1443 (9th Cir. 1989).  A local government unit, however, may not be held responsible for the acts of its employees or officials under a respondeat superior theory of liability.  See Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997).  Thus, municipal liability must rest on the actions of the municipality, and not of the actions of its employees or officers.  See id.  To assert municipal liability, therefore, the plaintiff must allege that the constitutional deprivation complained of resulted from a policy or custom of the municipality.  See id.  A claim of municipal liability under § 1983 is sufficient to withstand dismissal even if it is based on nothing more than bare allegations that an individual defendant's conduct conformed to official policy, custom, or practice.  See Karim-Panahi v. Los

Angeles Police Dep't, 839 F.2d 621, 624 (9th Cir. 1988).

Defendants are correct that plaintiff has not alleged any facts to indicate that defendant Shasta County Sheriff's Department had any policy or custom which contributed to or caused the alleged constitutional violations. Further, defendants have provided the uncontested declaration of officer Sheila Ashmun establishing that defendant Shasta County Sheriff's Department maintained appropriate policies with respect to the use of force and providing medical care. Therefore, defendant Shasta County Sheriff's Department is entitled to judgment as a matter of law.

### B. **Defendants Hicks and Dudley**

#### 1. Excessive Force

Based on the undisputed facts outlined above, defendants Hicks and Dudley are entitled to summary judgment on plaintiff's excessive force claim. Specifically, the facts establish that plaintiff was aggressive, confrontational, and resisted defendant Hicks' attempt to escort plaintiff to his cell assignment. In response to this aggression, defendant Hicks used an appropriate level of force to regain control of plaintiff. There is no evidence to support plaintiff's contention that defendant Hicks improperly attempted to lift him by the handcuff chain. Nor is there any evidence that defendant Hicks acted maliciously or sadistically for the purpose of causing pain. To the contrary, the evidence shows that defendant Hicks acted for the valid penological purpose of maintaining institutional security. As to defendant Dudley, there is no evidence that he was involved in the incident in any way.

#### 2. Medical Treatment

To the extent plaintiff alleges that defendants Hicks and/or Dudley were responsible for inadequate or delayed medical treatment, plaintiff cannot prevail. First, there is no evidence that either individual defendant was involved with plaintiff's medical treatment. Second, and more significantly, the undisputed evidence establishes that plaintiff was provided medical treatment immediately after his injury.

### 3. Qualified Immunity

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In general, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. See Saucier v. Katz, 533 U.S. 194, 201 (2001). If, and only if, a violation can be made out, the next step is to ask whether the right was clearly established. See id. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Id. "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202 (citation omitted). Thus, the final step in the analysis is to determine whether a reasonable officer in similar circumstances would have thought his conduct violated the alleged right. See id. at 205.

When identifying the right allegedly violated, the court must define the right more narrowly than the constitutional provision guaranteeing the right, but more broadly than the factual circumstances surrounding the alleged violation. See Kelly v. Borg, 60 F.3d 664, 667 (9th Cir. 1995). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand [that] what [the official] is doing violates the right." See Anderson v. Creighton, 483 U.S. 635, 640 (1987). Ordinarily, once the court concludes that a right was clearly established, an officer is not entitled to qualified immunity because a reasonably competent public official is charged with knowing the law governing his conduct. See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982). However, even

if the plaintiff has alleged a violation of a clearly established right, the government official is entitled to qualified immunity if he could have ". . . reasonably but mistakenly believed that his . . . conduct did not violate the right." Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); see also Saucier, 533 U.S. at 205.

The first two steps in the qualified immunity analysis involve purely legal questions. See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996). The third inquiry involves a legal determination based on a prior factual finding as to the government official's conduct. See Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995). In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

In this case, the court finds that, based on the undisputed facts as to what actually happened on August 2, 2006, any reasonable officer under the same circumstances would have believed that his conduct did not violate any constitutional right. Specifically, a reasonable officer would have understood that the level of force used by defendant Hicks was not excessive given plaintiff's aggression and the need to maintain control. Similarly, any reasonable officer would have believed that the medical treatment provided to plaintiff was not inadequate. Therefore, defendants Hicks and Dudley are entitled to qualified immunity.

///
///
///
///
///
///
///
///
///

## IV. CONCLUSION

Based on the foregoing, the undersigned recommends that defendants' unopposed motion for summary judgment (Doc. 18) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 10 days after being served with these findings and recommendations, any party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 21, 2009

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE